## No. 13,144.

EDGARD D. FARRAR VS. NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.

52 417
52 813
52 2153

52 417¹
106 237

52 417
114 975

### SYLLABUS.

Where the plaintiff heedlessly steps in front of a coming car without at all "looking" and "listening," and then stopping in case of danger, he omits observing one of the rules laid down in a number of decisions, which should be complied with by a pedestrian when he is about to cross a track, *i. e.*, to "look" and "listen."

While the failure to observe the rule does not relieve those in charge of the car from the necessity of being careful at all times, none the less, in order that a plaintiff may recover damages it must appear that the danger was not seen by the motorneer at a time when he should have seen it, and that he did not make every exertion to avoid the accident.

The plaintiff enjoyed the faculties of sight and hearing unimpaired at an advanced age. His steps were slow but the evidence does not show that his steps were so slow and feeble that he could not cross before the coming car, or that plaintiff would fail properly to use his senses of "hearing" and "seeing" and undertake to make the crossing despite the danger to which it was attempted to call his attention by ringing the gong and loudly hallooing to him.

The motorneer, while manning his car, had a right, to some extent, at least, to be governed by the belief that plaintiff would not seek to cross unless his strength was sufficient to enable him to cross before the arrival of the car.

APPEAL from the Civil District Court, Parish of Orleans— *King, J.*

*Boalner, Dodds & Boatner* for Plaintiff, Appellant.

*Dart & Kernan* for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J. Plaintiff brought this action to recover the sum of ten thousand dollars damage for injuries sustained, he alleges, through the negligence of the employees of the defendant company, in June, 1898, at about 9 o'clock in the morning. The defendant is the owner of a line of cars operating on St. Charles avenue, and has two tracks. The distance between the two rails, or the guage, is five feet, and the distance between the two tracks is eight feet. The car by which

418 SUPREME COURT OF LOUISIANA.

Farrar vs. N. O. & Carrollton R. R. Co.

plaintiff was struck was coming down the street on the river side track. Plaintiff charges that he could be seen approaching the track for a distance of about two blocks just prior to the accident, and that he was seen by the motorneer at a distance sufficient to avoid the accident by moderating the speed of the car had he been careful in manning the car. Plaintiff alleges that he is seventy years old and extremely feeble; that, on account of his age, his steps are slow; that his sight and hearing are considerably impaired; that he did not see any approaching car, nor hear any sound of the gong; that the motorneer was aware, from his slow progress when walking, and from his apparent weakness, that he would be unable to make any sudden movement or exertion for his protection; that it was the duty of the motorneer when he saw the petitioner near the track, and that petitioner was not aware of the car's approach, to check its speed and to protect petitioner from the danger of which he was unconscious; that, instead of doing this, he recklessly permitted the car to run at a dangerous speed, up to the moment it struck petitioner, who had nearly crossed the track, when he was thrown down and dragged about a car's length and greatly bruised and injured, from the effects of which he had not recovered at the time this case was tried, and from the effects of which he will never recover.

There were a number of passengers in the car at the time, among them a young boy, who testified that he was seated near the front of the car on the wood side, and heard, a moment before the accident, an alarm or commotion; a lady screamed; the motormon cried out and rang his bell; and the car was brought to a stop, jarring the witness and throwing him forward.

Another witness who was also a passenger, said that, as well as he could remember, the gong was sounded rapidly when they had made about a quarter of the block between Second and First street, at the corner of which the accident happened, and it attracted his and the attention of the other passengers, as did the cry "look out!" "look out!" uttered a few seconds before the car was brought to a stop. It was a very small fractional part of a minute from this call, i. e., ringing the gong, and cries "look out!" to the stopping. He and the other passengers jumped out of the car and he saw Judge Farrar, the plaintiff, who was in the act of rising from the ground with the assistance of some one near. He, plaintiff, was on the river side

about the centre of the street, and about opposite the second window from the front of the car.

The next witness, in the order in which they were examined on the trial, testifies that the car's length is about thirty feet, and that a car can be stopped within a car's length or less. He made a test of time required to cross defendant's track by one walking as slowly as plaintiff was walking when he attempted to cross the track just prior to the accident, and said it would take him from fifteen to twenty seconds to cross the defendant company's tracks.

The first witness, a member of the bar, sworn for the defendant, was also a passenger in the car which collided with the plaintiff. He testified that he heard a clanging of the car bell and some one screamed in front, who he afterwards discovered was the motorneer. This was within one-third or one-quarter of the square just above First street. Just then he saw plaintiff, apparently not noticing the car and walking over, not making much progress; an instant after plaintiff was thrown to one side. He was walking in about the middle of the track immediately in front of the car.

The second witness for defendant, a passenger, saw the accident and saw the plaintiff approaching the track and by the time the car was near him the motorneer began to ring his bell. The ringing began when the car was about midway between First and Second streets, but plaintiff did not seem to hear and walked on. After the loud exclamations the car slackened its speed. The alarm was sudden, also the stop.

The motorneer continued ringing his bell. Plaintiff did not stop, and when he was about the middle of the track he was struck and the car stopped. The motorneer was making every effort to stop his car. He stopped it just after plaintiff was struck, i. e., within about a car's length. There was nothing between the plaintiff and the car to prevent him from seeing the car. He, plaintiff, was about five car lengths off when he put his foot on the wood side of the track, not the one on which the car was coming down.

The third witness, another member of the bar, says the alleged offending car is an open one and that he was sitting on the woods side of the car about the third or fourth seat from the front. He noticed plaintiff, when the car was at Second street, crossing the gutter and moving on to the track. The car was coming down at the usual rate of speed. Plaintiff was walking rather slowly, and when the car was

420    SUPREME COURT OF LOUISIANA.

Farrar vs. N. O. & Carrollton R. R. Co.

about the middle of the block, the motorneer rang his gong. Plaintiff walked on and crossed the first up-town track and walked on to the second track to the place where he was struck, about half over the track. Everybody was screaming, the motorneer was yelling at the plaintiff and the gong was ringing.

The motorneer at the same time put on the brakes. When the plaintiff passed the first track and was coming across the second track, the motorneer put on the brakes violently. The car was two lengths away when several of the passengers became greatly alarmed and screamed. There were a number of passengers in the car. Plaintiff was walking slowly, but not particularly slowly.

The motorneer testified, contradicting the lad who was the fifth witness, that he had received a signal from a dispatcher or any one else to go on and not to stop; that he stopped at several points before coming to First street, and says that his car was on time, and that he was within twenty feet from he crossing when plaintiff stepped from the up-town track, between the two tracks, and crossed over when he applied the brakes, threw the power off, and hallooed. Plaintiff walked on until he was nearly across the down-town track when he was struck. He had checked the speed to one of five miles an hour, and a little activity on the part of the plaintiff would have enabled him to pass the second track entirely. The testimony of the motorneer is, in the main, similar to the testimony of the passengers. The case was tried before the judge without a jury. The demand of plaintiff was rejected, and he appeals.

We have analyzed the evidence, and have not found that the defendant was guilty of the recklessness and negligence charged. To arrive at a different conclusion, one would have to assume that the car was running at a dangerous rate of speed up to the very moment it struck petitioner; that the motorneer had time and cause to stop the car before the accident; that it had become apparent to him just prior to this accident that plaintiff was not conscious that a car was advancing upon him; that plaintiff's slow and labored way of walking rendered it impossible to hasten and get out of the car's way.

With reference to the rate of speed, it does not appear to have been unusual. It was at a rate less than the number of miles per hour sanctioned by the ordinance of the City Council regarding railroad speed, and there was no occasion to lessen the speed prior to leaving Second street, the first street before the one where the accident

occurred. A very short distance after having left the intersection of this street with St. Charles avenue, the motorneer and others saw Judge Farrar, who, the evidence shows, had frequently crossed the streets while on his usual walks. The alarm was given sufficiently loud to attract the attention of any save one absorbed in study or thought and entirely unconscious of an approaching car. The speed was, from that time, until the collision, slackened. As relates to the speed there was nothing unusual or wrong. As long as municipal ordinances sanction the speed at the present rate, and passengers expect and insist upon fast transit going to and returning from home and other places, no more, ordinarily, can be required than the sounding of the gong and the slackening of the speed. This was done in this case, as was shown by the testimony of all the witnesses, and a stop was made as sudden as possible.

With reference to the time and opportunity the motorneer had within which to stop the car, as alleged by plaintiff, it does not appear that the motorneer had cause enough to make it imperative to stop the car at the moment that plaintiff was stepping on the track on which defendant's car was running.

Plaintiff, it is true, is old and physically feeble, but the evidence of the passengers who saw the accident does not disclose that he was apparently so feeble as to make it dangerous for him to attempt to cross in front of an advancing car, nor does it appear that the motorneer had noticed in time to prevent the accident that the old gentleman would not recover from his unconsciousness of an approaching car sufficiently to make him stop and not place himself in peril. We must say here that we are not inclined to give much importance to the rule that requires of the pedestrian that he should "stop, look and listen." It is to be expected, only exceptionally, that a pedestrian should stop, and then look and listen. It would be, ordinarily, requiring too much of the pedestrian, i. e., to "stop, look and listen." But here the plaintiff did not "look and listen," and did not hear the ringing and loud screaming.

With reference to the plaintiff's unconsciousness of an approaching car being apparent to the motorneer, it was to awaken the attention of the plaintiff that he was called on by loud shouts and gong ringing. When these had failed in accomplishing the purpose intended, we infer from the testimony that it was entirely too late to do more than was done to stop the car. We have not discovered that there was any·

thing to lead the motorneer to think that plaintiff would not hear the alarm given. Regarding plaintiff's slow and feeble steps, urged as sufficient to have given warning to the motorneer to stop his car, in order to give this fact the importance for which plaintiff contends, we would have to assume that the motorneer knew, or should have known, that plaintiff would attempt to make the crossing before the car. The evidence shows that, although plaintiff is quite aged, his sight, hearing and mind are quite acute. He would have heard, we infer, had it not been for the fact that he was meditating on some subject which rendered him entirely unconscious of any noise at all. This was the cause of the unfortunate accident. True, if the motorneer had stopped the car when he was near, he would have avoided the accident; but was he bound to assume that the plaintiff would not hear, and that, therefore, the stopping of the car was necessary? And again, was he bound to assume that plaintiff would fail to make the crossing, if he chose to take the chances?

We have given careful attention to the principles laid down in the cited decisions. Counsel refer, with confidence, to the case of McGuire vs. R. R. Co., 46 Ann., 1543. The facts, briefly stated, were that the victim of the accident in this cited case was intoxicated, and lying prone upon the ground within the range of the railroad light. The engineer would have seen him (it is reasonably certain) had his view not been obscured by the escape of steam, owing to a defect in the engine, which the defendant company had failed to repair. The court held that the engineer saw, or should have seen, the man thus exposed, and should have stopped the train. In the case before us, plaintiff was not on the track, nor was he apparently lifeless and greatly exposed (unless unconscious of approaching danger owing to his absent mindedness at the time). The motorneer had the right to assume that he would heed the warning of approaching danger. This court said, in Snider vs. Railroad, 48th Ann., 11, that plaintiff had placed himself directly in front of an approaching car and that escape from collision was impossible, as there was nothing to place the motorneer on his guard, or make him suppose that plaintiff would seek to cross.

The situation was very much the same in the case now before us for decision. In another case the court said that the evidence showed that plaintiff's wife was hard of hearing and wore a large sun bonnet which, in part, concealed her face. She neither saw nor heard the

approaching car while attempting to cross the street, for had she seen or heard it, she would either have stopped, or, at her peril, hurried over safely. It is not to be supposed that the driver for an instant imagined that she would not stop. He was not wrong in believing that she would exercise her senses and stop.

Did not the motorneer, in the case here, have the right to assume as in the case cited, that the plaintiff would realize the danger and not expose himself? Plaintiff was not physically helpless, and there was no reason to suppose, when he first came into view of the motorneer, that he would incur the risk of crossing, or would not cross in time. When it was discovered by the motorneer that plaintiff was attempting to cross and would not make the crossing, as testified to by the passengers; it was too late to stop in time to avoid the blow.

A pedestrian must use his faculties for his own protection. When he is unconscious of the danger, the unconsciousness must be apparent in sufficient time to enable the car to stop.

The District Judge, who heard and saw the witnesses, decided that defendant was not at fault. We have weighed the evidence as carefully as we could, and have arrived at the same conclusion. We have not found it possible, under the law, to reverse the decision and pronounce judgment for plaintiff.

The judgment of the District Court must be affirmed. It is affirmed.

### On Application for Rehearing.

WATKINS, J. This is an action in damages for personal injuries inflicted on the plaintiff, through the alleged negligence of defendant's employees—plaintiff having been struck by one of its cars as he was approaching the track and was plainly visible, and was evidently seen by the motorneer in ample time to have stopped the car and thus avoided the accident.

But it is quite significant that petitioner, at the same time, declares that he did not see, or hear the car approaching.

His averment is that the car was running at a dangerous rate of speed at the moment of contact.

There were a number of passengers on the car at the time, who gave their testimony as to the occurrence; and the case was tried by the judge, who, after having seen and heard the witnesses, gave judgment in favor of the defendant, and our opinion affirmed his decree by a concurrence of all the justices.

The application is based exclusively upon the ground that our opinion did not give sufficient weight to the facts tending to prove negligence.

A re-examination of the case has confirmed us in our original conclusion.

Rehearing refused.